PINE BLUFF NATURAL GAS COMPANY *v.* SENYARD.

Opinion delivered May 12, 1913.

NEGLIGENCE—INDEPENDENT CONTRACTOR—GAS COMPANY—INJURY TO PER-
SON ON STREET.—Defendant, a gas company, under its franchise
from a city, possessed the right to lay its pipes in the city streets,
but was required not to unnecessarily obstruct the streets. After
laying its pipes, defendant contracted with one H to relay the
street paving. H, preparatory to relaying the pavement, piled
materials in the street to be used in the work. Plaintiff, at night,
drove her buggy into a pile of gravel, and was thrown out and
injured. *Held,* in an action against defendant for damages, plain-
tiff was entitled to recover, although the injury was due to the
act of a contractor, on the ground that defendant owed a duty
to the public to keep the street in a safe condition, and that the
negligence causing the injury was a probable consequence of the
work contracted for.

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

STATEMENT BY THE COURT.

Mildred Senyard brought this action against the Pine Bluff Natural Gas Company to recover damages for personal injuries received by her while driving along W.alnut Street in the city of Pine Bluff at about 8:30 o'clock P. M., and which she alleged were caused by her buggy being overturned by running upon a pile of gravel placed by the defendant in the street. The circumstances attending the injury are as follows:

The city of Pine Bluff granted to the defendant a franchise allowing it the privilege of laying pipes, mains and other appliances in the streets of the city for the purpose of conveying and supplying natural gas to consumers thereof. The sections of the ordinance granting the franchise which are relevant to the present case are as follows:

"Section 1. That H. S. Grayson, hereinafter designated as the grantee, be and is hereby granted the privilege and vested with the right to use the streets, lanes, avenues, alleys, commons, bridges and other public grounds and places within the corporate limits of the city of Pine Bluff, Arkansas, for the period of thirty (30) years from the date of passage of this ordinance, for the purpose of laying, maintaining, repairing, reclaiming and removing pipes, mains and other necessary appliances to be used for carrying and conveying natural gas for public and private use in buildings, manufacturing establishments and otherwise within the said city of Pine Bluff, Arkansas, together with the right to dig and excavate in all or any of the said streets, lanes, avenues, alleys and other public grounds and places for the purpose of laying and constructing such mains, pipes and other appliances, and removing the same, required to convey and conduct said gas to consumers upon the following conditions:

"Section 3. In the work of laying, repairing, reclaiming and removing said pipes and appliances, the

said grantee shall not unnecessarily obstruct or interfere with the use and occupancy of any streets, lanes, avenues, commons, public grounds or places, and in no wise injure, interfere with or change any existing arrangements for gas, water pipes, drains, sewers, ditches or other public or private works of said town.

"Section 4. Said grantee shall relay and replace with due diligence any and all pavements, curbs, gutters, streets, avenues, alleys and other public grounds and places disturbed by him in the same manner and like conditions as the same may have been before excavating, leaving the surface of all unpaved streets smooth and level; provided, that nothing contained in this section shall authorize any act in violation of any ordinance now in effect or to be hereafter passed by the council of the said city of Pine Bluff, nor prevent said city from replacing any such pavements by its' agents, at the expense of said grantee. Nor shall anything contained in this section be construed on behalf of said city of Pine Bluff as waiving any right now possessed or hereafter to be possessed by said city to exercise full control over all streets, avenues, alleys or other public grounds.

"Section 5. The said grantee shall preserve and keep the city of Pine Bluff, Arkansas, safe, free and harmless from any damage, costs or expenses that may be incurred or happen to persons or property by reason or on account of anything done by said grantee under the provisions of this ordinance, and shall defend, at his own proper costs, any suits brought against the city of Pine Bluff, Arkansas, by persons or corporations claiming damages or injury on account of the creation and maintenance of the natural gas plant of said grantee."

The street on which the injury occurred was paved with wooden blocks. For the purpose of laying its mains, the gas company tore up the street, and dug a trench running north and south on Walnut Street. The trench was dug about ten feet from the east curb and was about four feet deep and ten inches wide. The

street was forty feet wide from curb to curb. The blocks taken up were piled between the trench and the east curb of the street. After the gas company had laid its mains, it replaced in the trench or ditch the dirt it had excavated and firmly tamped it. The gas company had entered into a contract with Elson Hale to replace the pavement. This work was accomplished by first spreading a concrete foundation several inches thick over the refilled trench, and then laying the blocks on the concrete foundation. The concrete foundation was made of gravel mixed with cement. To successfully do this, it was necessary to bring the gravel and cement to that part of the street that was being repaired so that they might be mixed as they were spread upon the surface of the street. Preparatory to doing this work, Hale hauled about a wagon load of gravel and deposited it on the west side of the street next to the curb. He placed some wheelbarrows, which were to be used in the work, on top of the pile of gravel. The pile of gravel was allowed to remain over night without any light or other precaution taken to warn the travelling public that it was there. The gas company placed lights about forty or fifty feet apart along the line of the refilled trench. The gravel was placed in the street about 4 o'clock P. M., on Saturday, the 11th day of February, 1912. About 8:30 o'clock in the evening Mrs. Senyard, the plaintiff, was driving along Walnut Street in a buggy, and when she was between Third and Fourth streets she drove into the pile of gravel and was thrown from her buggy and severely injured.

The evidence for the plaintiff tends to show that it was too dark to see the obstruction, and one of her witnesses stated that upon examination made afterwards, he found that the gravel extended about five feet into the street and that there was hardly room for a vehicle to pass between it and the ditch on the other side. The street in question had a great deal of traffic over it.

There was a verdict and judgment for the plaintiff and the defendant has appealed.

*Coleman & Gantt* and *Moore, Smith & Moore,* for appellant.

Hale was an independent contractor for whose acts appellant was not liable. 32 Ark. L. Rep. 771; 77 Ark. 551; 54 *Id.* 427; 53 *Id.* 503; 26 Cyc. 1553; 88 N. W. 741; 49 N. W. 822; 78 Pac. 337; 39 La. Ann. 551; 49 Am. Rep. 113; 98 N. W. 573; 43 S. E. 562; Dillon on Mun. Corp. (5 ed.), § 1723.

*A. H. Rowell,* for appellee.

A corporation owing a public duty can not delegate its duties to another and escape liability for negligence. 39 So. 142; 49 N. W. 822; 78 Pac. 337; 16 Wall. 576; 88 N. W. 741; 71 Am. Dec. 285; 63 S. E. 367; 72 Atl. 1069; 20 N. E. 33; 14 L. R. A. 398; 34 S. W. 590; 83 U. S. 566; 27 L. R. A. 590; 51 Am. Rep. 269; 45 N. E. 668; 153 S. W. 838; 87 S. W. 297; 53 Atl. 807; 150 S. W. 77; 108 Pac. 509; 48 N. E. 66; 87 Ill. App. 40; 26 Cyc. 1562; 140 S. W. 1197; 55 N. E. 618; 56 *Id.* 797; 81 Ark. 199; 77 *Id.* 553; 54 *Id.* 131; 152 S. W. 148.

HART, J., (after stating the facts).  To reverse the judgment, counsel for the defendant invoke the general rule that the employer is not responsible for the negligence of an independent contractor. They concede that there are exceptions to the general rule, and that one of them is that where a person causing something to be done, the doing of which casts on him a public duty, he can not escape from the responsibility attaching on him of seeing that duty performed by delegating it to a contractor. They do contend, however, that the piling of the gravel in the street without a light was purely collateral to the work contracted to be done, and was entirely the result of the wrongful acts of the contractor, Hale, and therefore he alone is liable. We can not agree with their contention. The city council has entire control of the streets of the city and it was its duty to the public to keep them unobstructed and safe for passage in the ordinary modes of travel.

In recognition of its duty to the public, the city council provided in the ordinance that the defendant, in the work of laying and repairing its pipes and appliances, should not unnecessarily obstruct or interfere with the use of the streets of the city. The defendant when it began the work of tearing up the streets of the city for the purpose of laying its gas mains assumed all the obligations of the city to the public, and it became its duty to exercise ordinary or reasonable care in the laying and repairing of its mains so as to prevent such work from obstructing the street or endangering those using it. In *Chicago City* v. *Robbins,* 2 Black (U. S.) 418, and again reported under the style of *Robbins* v. *City of Chicago,* 4 Wall. (U. S.) 657, Robbins was held liable for damages by a pedestrian upon the streets of Chicago falling into an area which his contractor had made before a building he was erecting in that city. In the first opinion, the court said: "Robbins' duty was absolute to see that the area dug under his direction and for his benefit should be safely and securely guarded and, failing to do so, his liability attached and the jury should have been told so."

In the opinion on the second appeal, it is said: "The import of the decision of this court in reversing the former judgment of the circuit court, and remanding the cause for a new trial, was that the party contracting for the work was liable in a case like the present, where the work to be done necessarily constituted an obstruction or defect in the street or highway which rendered it dangerous as a way for travel and transportation, unless properly guarded or shut out from public use; that in such cases the principal for whom the work was done could not defeat the just claim of the corporation or of the injured party by proving that the work which constituted the obstruction or defect was done by an independent contractor."

In the case of *Hawver* v. *Whalen,* 49 Ohio St. 69, 14 L. R. A. 828, it was held that the owner of a city lot, who made an excavation in the sidewalk for coal cellars, to

be used in connection with the building, was bound to guard it with ordinary care, and that this duty could not be delegated to an independent contractor employed to construct the cellar.   The court said:

"There is much innate justice in a rule of law that declines to permit one who causes work to be done, the performance of which though not necessarily injurious to the persons or property of others, yet necessarily creates conditions inimical to their safety, to exonerate himself from all duty towards those whom he had thus exposed to danger."

In the case of *Woodman* v. *Metropolitan R. R. Co.* 149 Mass. 335, 14 Am. St. Rep. 427, the court held:

"Where a city railroad company is engaged in laying a track in a public street, and negligently leaves rails projecting beyond a temporary barrier inclosing the place where the track is being laid, it is liable in damages to one, who, travelling at night, and exercising due care, is injured by coming in contact with such projecting rails, notwithstanding the fact that the injury was sustained at other than a regular street crossing, and that the work was being done by an independent contractor."

In the case of *Village of Jefferson* v. *Chapman,* 11 Am. St. Rep. 139, the Supreme Court of Illinois said:

"Another exception to the general rule relieving an employer from liability for an injury occasioned by an independent contractor is where the party causing the work to be done is under a primary obligation imposed by law to keep the subject-matter of the work in a safe condition.   The principle upon which this exception is predicated is, that where a duty is so imposed, the responsibility for its faithful performance can not be avoided, and that the party under such obligation can not be relieved therefrom by a contract made with another for the performance of such duty."

The facts of the present case, we think, bring it within the exceptions we have noted.   Walnut Street was paved with wooden blocks and was a public street over

which there was much travel. The defendant, with its own servants, tore up the street for the purpose of laying its mains, and piled the blocks with which it was paved next to the east curb of the street. After it had laid its mains, and refilled the trench, Hale, under his contract with the defendant, began the work of repaving the street. Before the paving blocks could be replaced in the street it was necessary to prepare and lay a concrete foundation for them to rest upon. The concrete foundation was made by placing a mixture of gravel and cement upon the dirt, and it was necessary that the gravel and cement should be mixed near the place where it was to be spread upon the surface of the street. To do this, it was also necessary to pile the gravel in the street preparatory to mixing it with the cement for the purpose of constructing the concrete foundation. The piling of the gravel in the street for this purpose necessarily rendered the street unsafe for night travel. This was a condition which did not depend upon the care or negligence of the contractor, but the danger arose from the very nature of the work contracted for and could only be averted by placing lights or danger signals to warn those travelling the street at night that the obstruction was there. That is to say, the performance of the work in the usual and only practical way it could be performed, necessarily created a condition which would bring wrongful consequences unless guarded against, and inasmuch as the contract could not have been performed by Hale except under the right of the defendant, the defendant was under a primary obligation imposed by law to keep in safe condition the subject-matter of the work, which in this instance was the street. The injury sustained was caused by the gravel, which had been left in the street, and which came within the duty of the defendant to persons travelling on the streets to see that they were kept safe.

In such a case, the responsibility for the faithful performance of the work can not be avoided, and the defendant being under such obligation can not be re-

lieved therefrom by a contract made with another for the performance of that duty. In cases like the present, where the employer owes a public duty to keep the subject-matter of the work in safe condition, it is only where the negligence complained of is entirely collateral to and not a probable consequence of the work contracted for that the employer can escape liability; and we hold that the negligence complained of was not collateral. The question of negligence was submitted to the jury under proper instructions and the judgment will be affirmed.

McCULLOCH, C. J. and WOOD, J. dissent.

McCULLOCH, C. J., (dissenting). It is undisputed that the work of restoring the pavement over the refilled trench was, at the time of plaintiff's injury, being done for the defendant by an independent contractor.

Ordinarily, liability for injury on account of the negligent act of an independent contractor does not fall upon the person who has employed the contractor to do the work; but there is a well recognized exception to that rule, which is to the effect that, where the work to be performed is necessarily dangerous or creates a nuisance, then it can not be delegated so as to shift liability for any injury that results therefrom.

The majority finds this case to fall within the exception, and in this I think they are clearly in error.

The exception has been recognized by this court in numerous decisions, beginning with the case of *St. Louis, I. M. & S. Ry. Co.* v. *Yonley*, 53 Ark. 503, where it was said:

"If one employs another to perform a work which from its nature is necessarily dangerous to the property of a third person, the employer can not escape liability for the injury thereby done. In such cases the injury flows from the doing of the act as its natural consequence, and not from the manner in which the act is done."

Another way of stating the exception is that, where one owes a public duty, responsibility can not be shifted by delegating it to another.

Judge Dillon, in the last edition of his work on Municipal Corporations (5 ed., vol. 4, § 1723) states the rule with respect to work done in public streets as follows:

"Where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purpose of public travel, unless properly guarded or protected, the employer * * * where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract work, and entirely the result of the negligence or wrongful acts of the contractor, subcontractor, or his servants. In such a case the immediate author of the injury is alone liable."

Another clear statement of the rule is found in the opinion of the Supreme Court of the United States delivered by Mr. Justice Clifford in the case of *Water Company* v. *Ware*, 16 Wall. 566, as follows:

"Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employs the contractor and authorizes him to do those acts is *equally liable* to the injured party * * * Common justice requires the enforcement of that rule, as if the contractor does the thing which he is employed to do the employer is as responsible for the thing as if he had done it himself, but if the act which is the subject of complaint is purely collateral to the matter contracted to be done, and arises indirectly in the course of the performance of the work, the employer is not liable, because he never authorized the work to be done."

Now, when the duty which defendant, in temporarily occupying the street, owed to the public and the particular work which it delegated to the contractor is analyzed, it seems clear to me that the alleged act of negligence was in the performance of a collateral act for which the defendant is not responsible. It occupied the street for the purpose of laying its gas mains, and the trench was dug for that purpose. It owed the public the duty of refilling the trench and restoring the pavement to its original condition, and was responsible for any injury that resulted either from the exposed condition of the trench or any obstacle that necessarily resulted from the work in restoring the pavement. This duty could not be delegated to another, but its responsibility must, under the law, be confined to an injury which resulted from necessary obstructions, and not merely from collateral acts. If the contractor had been guilty of negligence in failing to properly restore the pavement or in failing to properly guard the open ditch before the work of restoration was complete, then defendant would be liable, because that was a duty which it owed to those who use the streets. But under the contract the defendant exercised no control whatever over the contractor in the particular manner in which the work was to be done. Though it was contemplated that sand and gravel should be used, it was not a part of the contract that it should be placed in the street, nor was it necessary that it should be placed there. The question of placing the sand and gravel in the street was purely collateral. It was merely one of the methods whereby the preparation was made for doing the work. It certainly was not necessary to place the gravel in a place where it would obstruct the street. It might have been placed between the trench and the east curb; or it might have been placed upon the curb and the sidewalk, or upon some abutting lot. It might have been hauled and unloaded as it was needed without being piled in the street at all. Those were matters which were, under the contract, left to the free and unrestrained action of the contractor himself and concerning which the defend-

ant had no control over him. All that the contract required was that the contractor should restore the pavement, and he was permitted to go about assembling the material in any way that he saw fit.

The case of *Sanford* v. *Pawtucket Street Railway Co.,* 19 R. I. 537, is directly in point. There an independent contractor was employed to construct a street railroad, and in doing so the contractor negligently stretched a rope or wire across a street in the city of Pawtucket, which rendered the highway dangerous to travellers and caused an injury. The court, after discussing the rule as to liability for the act of independent contractors, said:

"The defendant made no agreement with the contractor as to the particular manner in which the road should be constructed or the trolley wire erected. That is to say, the defendant did not authorize the contractor to place, stretch or maintain a wire or rope across the street, in the manner complained of. He was simply authorized to construct the road, thus leaving the manner of doing the same to his skill and judgment. Moreover, the work authorized to be done was not in itself a nuisance, nor was it necessarily dangerous or injurious. It was authorized by law. The manner in which it was done was the sole cause of the injury complained of. Hence, the obstruction or defect created in the street was purely collateral to the work contracted to be done, and was entirely the result of the wrongful or careless acts of the contractor or his workmen; and in such case it is well settled that the employer is not liable."

Another case directly in point is that of *Hackett* v. *Western Union Telegraph Company,* 80 Wis. 187, where an independent contractor dug a hole in a street which caused the injury complained of, and the court, in holding that the employer was not responsible, said:

"Nor does the case come within the well recognized exception to such general rule, to the effect that where the performance of such contract, in the ordinary mode of doing the work, necessarily or naturally results in

producing the defect or nuisance which caused the injury, then the employer is subject to the same liability to the injured party as the contractor.    *   *   *   In the case at bar the railroad company was not required by the contract to dig any hole in a travelled public street, much less to leave the same open and unguarded at night.''

. Many other cases cited in appellant's brief illustrate what should be termed collateral acts for which the employer of an independent contractor is not responsible.

I think, according to the undisputed testimony, the alleged act of negligence was committed in the performance of a purely collateral act for which the defendant was not responsible and that the judgment should be reversed and the cause dismissed.

But even if it can not be said that the evidence is undisputed on this point, there was, to say the least of it, abundant testimony which warranted the jury in finding that the placing of the obstruction in the street was a collateral act for which the defendant was not responsible, and the court erred in refusing to submit that question to the jury and in telling the jury broadly in its instructions that ''if the defendant or any contractor employed by it did place obstructions of building or paving materials in said streets and failed to use reasonable caution to light the same at night, *   *   *   and that the failure to provide such lights was the proximate cause of the injury and was due to the negligence of defendant or its servants or employees,'' that the defendant was liable.

Mr. Justice WOOD concurs in the views here expressed.